UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20132-Civ-Gold
    (06-20679-Cr-Gold)
MAGISTRATE JUDGE P. A. WHITE

STANFORD GREEN,               :

        Movant,               :

v.                            :          REPORT OF
                                       MAGISTRATE JUDGE

UNITED STATES OF AMERICA      :

        Respondent.           :
_____

        This matter is before this Court on the movant's timely filed
motion to vacate pursuant to 28 U.S.C. §2255, attacking his
conviction and sentence for making or aiding and abetting a false
statement in connection with the acquisition of a firearm and
possession of a firearm by a convicted felon, entered following a
guilty plea in case no. 06-20679-Cr-Gold.

        The Court has reviewed the motion (Cv-DE#1), the government's
response (Cv-DE#10), the movant's rebuttal (Cr-DE#11), the
government's supplemental response (Cr-DE#12), the movant's
response to the government's supplemental response (Cr-DE#13), the
Pre-sentence Investigation Report (PSI), and all pertinent portions
of the underlying criminal file.

                          Claims Raised

        The movant's §2225 motion is a convoluted document that is
difficult to decipher. This court, recognizing that the movant is
pro se, has afforded the movant liberal construction pursuant to

1

<u>Haines v. Kerner</u>, 404 U.S. 419 (1972). As can best be extrapolated from these filings, the movant raises the following claims:

1. The movant was denied effective assistance of counsel when his attorney failed to file a motion to suppress that the ATF Miami Crime Gun Center received a referral regarding a Glock pistol seized by the Bahamian Police. (Cv-DE#1:2).

2. The movant was denied effective assistance of counsel when his attorney failed to inform the jury that the government was "playing games with words." (Cv-DE#1:2).

3. The movant was denied effective assistance of counsel when his attorney failed to inform the jury that the ATF's decision to abandon its opportunity to have the movant caught in a sting of multiple firearm purchases was odd. (Cv-DE#1:3).

4. The movant was denied effective assistance of counsel when his attorney failed to argue that the transcript of the conversation on September 19, 2006, between Smith and the movant was unclear as to the subject matter. (Cv-DE#1:3).

5. The movant was denied effective assistance of counsel when his attorney failed to stress that the government did not provide video evidence of the movant and Smith at the pawn shop to support Smith's testimony that an exchange of money to purchase the firearm was discretely done at the store or that Josel Alarcon failed to testify that he saw the men exchange money. (Cv-DE#1:4).

2

6. The movant was denied effective assistance of counsel when his attorney failed to impeach Alarcon with a prior inconsistent statement. (Cv-DE#1:5).

7. The movant was denied effective assistance of counsel when his attorney failed to utilize or introduce video tapes which demonstrated inconsistences and fabrications. (Cv-DE#1:6).

8. The movant was denied effective assistance of counsel when his attorney failed to impeach Agent Elbaum. (Cv-DE#1:7).

9. The movant was denied effective assistance of counsel when his attorney failed to raise the possibility that the pawn shop was used for its convenience and location. (Cv-DE#1:7).

10. The movant was denied effective assistance of counsel when his attorney failed to argue that the ATF's operational plan was questionable. (Cv-DE#1:8).

11. The movant was denied effective assistance of counsel when his attorney failed to call law enforcement officers as witnesses during trial. (Cv-DE#1:8).

12. The movant was denied effective assistance of counsel when his attorney failed to impeach King's testimony with a prior written statement. (Cv-DE#1:9).

13. The movant was denied effective assistance of counsel

when his attorney failed to call witnesses, adequately cross examine agents regarding exculpatory evidence and inconsistencies and call into question the credibility of government witnesses. (Cv-DE#1:9).

14. The movant was denied effective assistance of counsel when his attorney failed to file a motion to preserve the movant's rights within the ten-day period as required. (Cv-DE#1:10).

### Factual History

On August 18, 2006, special agents with the ATF received information from the Miami Crime Gun Center. (PSI¶3). According to testimony introduced at trial, the Royal Bahamian Police Force (RBPF) seized a Glock, .45 caliber pistol on February 9, 2006 in Nassau, Bahamas. (Id.). A trace of the firearm revealed it had been among two other Glock firearms purchased on the same date by Gregory Smith on September 9, 2005 from a pawn shop named 27th Avenue Pawn and Gun. (Id.). Thereafter, the RBPF requested the ATF to investigate how the firearm, purchased in Miami, Florida, was recovered in the Bahamas. (Id.).

On September 12, 2006, Smith was interviewed at his residence by ATF special agents. (PSI§4). During the interview, Smith admitted buying the three firearms in question and provided receipts for their purchases. (Id.). He further admitted purchasing the firearms for the movant. (Id.). Additionally, Smith informed the agents that the movant was a Bahamian national who owned an export business by the name of Glenwood Export, and although he was unsure whether the movant had a criminal arrest history, he believed the movant did not have a resident alien card. (Id.).

4

Smith further informed the agents that the movant asked him to purchase the guns at 27th Avenue Pawn and Gun and the movant was to select the firearms. (PSI¶5). The movant picked up Smith at his residence in order to purchase the firearms; the movant also provided Smith with the money to make the purchases. (Id.). Smith further stated that upon leaving the pawnshop, he gave the firearms to the movant. (Id.). After the purchase, the movant paid Smith $100 for making the purchase; the amount was less than what Smith anticipated. (Id.). Subsequent to the first purchase, the movant once again called Smith in order for him to make more firearm purchases. (Id.). However, at that time, Smith agreed to cooperate with the agents. (Id.). Smith informed the agents that he learned the guns purchased for the movant were sent to the Bahamas. (Id.).

On September 13, 2006, Smith had two telephone calls with the movant. (PSI¶6). At the direction of the agents, Smith informed the movant that he knew someone who had firearms and that he would try to have them for the movant the following day. (Id.). The movant indicated that he wanted the firearms. (Id.).

On September 18, 2006, Smith informed the movant that the firearms were rusted and therefore, he would not be interested in purchasing them. (PSI¶7). Then, Smith asked the movant whether he wanted to do something else, "like another shop." (Id.). The movant responded that he did not think Smith wanted to do that, but after Smith explained that he needed the money to pay off a ticket, the movant advised that they would make a purchase the following day. (Id.).

On September 19, 2006, Smith asked the movant to call him before the end of the work day. (PSI¶8). When Smith questioned the movant as to where they were going to purchase the firearm, the

5

movant indicated that they would go "where they went before."
(<u>Id.</u>).

Subsequently, on October 5, 2006, Smith and the movant met in
the parking lot of 27th Avenue Pawn and Gun and entered the store.
(PSI¶9). Pursuant to Smith's debriefing, the movant did most of the
talking with the clerk while inside. (<u>Id.</u>). The movant inquired
about Glock firearms and after the clerk showed him a Glock, .9mm
firearm, the movant stated that he wanted three brand new firearms
of the same kind. (<u>Id.</u>). Upon Smith asking the price of the
firearms, the clerk informed them that he did not have any new
Glocks and would have to order them. (<u>Id.</u>). While the clerk began
the paperwork to order the firearm, he informed Smith and the
movant of a store in Hialeah, Florida where they could possibly
find new Glocks. (<u>Id.</u>). The movant then commented that the Glock
looked old and discussed the price. (<u>Id.</u>). The clerk proceeded to
retrieve a form to be filled out by the purchaser of the firearm,
during this, the movant gave Smith $400 with which to pay the
firearm. (<u>Id.</u>).

Smith completed the form, swearing he was the actual buyer of
the firearm. (PSI¶10). Smith then paid the clerk for the firearm
with the money provided by the movant. (<u>Id.</u>). Upon receiving change
for the purchase, Smith in turn gave the change to the movant.
(<u>Id.</u>). The clerk also gave Smith a receipt for the firearm, which
he kept. (<u>Id.</u>). After leaving the pawnshop, the movant informed
Smith that he was going to the pawnshop in Hialeah. (<u>Id.</u>). The
movant then questioned Smith as to how much Smith was paid for the
September 9, 2005 purchase, to which Smith responded $200. (<u>Id.</u>).
The movant then informed Smith that he would pay Smith $500 for the
combined purchase. (<u>Id.</u>).

6

On October 11, 2006, Smith and the movant met again at the 27th Avenue Pawn and Gun to retrieve the firearm purchased on October 5, 2006. (PSI¶11). The movant was sitting in his vehicle when Smith arrived. (Id.). The movant called Smith and directed him to enter the store by himself, pick up the gun and then give it to him at the parking lot. (Id.). According to Smith, the movant thought it looked suspicious for both of them to go into the pawnshop together. (Id.). However, Smith advised the movant that he should also enter the store in order to verify that the correct firearm was provided. (Id.). Thereafter, both men entered the store; however, the clerk informed them the store was closing and they would have to return the another day. (Id.). Smith and the movant agreed to meet the following day. (Id.).

On October 13, 2006, based on agreements made during telephone calls, Smith entered the pawnshop and retrieved the firearm after completing the required ATF form. (PSI¶12). Smith went to his vehicle with the firearm and waited for the movant to arrive. (Id.). While doing so, Smith and the movant had a telephone conversation wherein Smith was checking to see whether the movant was in route to the pawnshop. (Id.).

The movant then arrived at the parking lot of the pawnshop and stopped his vehicle next to Smith's vehicle. (PSI¶13). Smith exited his vehicle and handed the firearm to the movant. (Id.). The movant then drove through the parking lot onto NW 27th Avenue, where he was stopped and placed under arrest. (Id.). Behind the passenger's seat of the movant's vehicle, the agents recovered the same Glock, Model 19, .9mm pistol Smith had transferred to the movant. (Id.).

7

## Procedural History

The procedural history of the underlying criminal case reveals that on October 27, 2006, the grand jury returned an indictment charging the movant with making or aiding and abetting a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§922(a)(6) and 2 (Count One) and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1). (Cr-DE#11).

On January 4, 2007, the government filed a notice of inextricably intertwined 404(b) evidence stating that one year before the charged conduct the movant had paid Smith $200 to purchase three Glock pistols for him. (Cr-DE#27). Prior to choosing the jury, the District Court heard argument on the admissibility of the prior firearm purchase evidence from both sides. (Cr-DE#77). The District Court concluded that the evidence was admissible as inextricably intertwined evidence. (Cr-DE#49).

Thereafter, on January 8, 2007, jury trial commenced. (Cr-DEs#28-29). After one day of trial, the jury returned a verdict of guilty as charged. (Cr-DE#32).

A PSI was prepared in anticipation of sentencing wherein the probation officer determined that Counts One and Two are grouped together because they involve the same victim and two or more acts or transactions connected by a common criminal objective or consisting part of a common scheme or plan. (PSI¶17). Thus, pursuant to U.S.S.G. §2K2.1(a)(6)(A), because the defendant was a prohibited person at the time he committed the offense, his base offense level was 14. (PSI¶18). Moreover, because the offense involved more than 2 and less than 8 firearms, the offense level

8

was increased by 2 levels. (PSI¶19). Likewise, because the movant engaged in the trafficking of firearms, the offense level was increased by four levels. (PSI¶20). The total offense level was set at 20. (PSI¶27).

The probation officer further determined the movant had zero criminal history points and a criminal history category of I. (PSI¶33). Based on a total offense level of 20 and a criminal history category of I, the guideline imprisonment range was 33 to 41 months. (PSI¶68).

On July 30, 2007, the movant appeared for sentencing wherein the District Court sentenced him to 18 months imprisonment on each count, to run concurrently, three years of supervised release on each count, also to run concurrently, and a $200 special assessment. (Cr-DEs#59,63). The clerk entered judgment on August 20, 2007. (Cr-DE#63). The movant thereafter filed a timely notice of appeal. (Cr-DE#66). On April 23, 2008, the Eleventh Circuit, per curiam, affirmed the movant's conviction. (Cr-DE#85). It appears the movant did not petition for writ of certiorari with the Supreme Court. The judgment of conviction in the underlying criminal case became final at the latest on July 23, 2008, ninety days after the judgement was issued on direct appeal[1], when time expired for seeking certiorari review with the Supreme Court. The movant filed

---

[1]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufmann, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

this timely motion to vacate on January 9, 2009. (Cv-DE#1).[2]
Pursuant to the Federal Bureau of Prisons website, the movant has
been released.

## Discussion of Claims

First, it should be noted that the foregoing claims could have
been, but were not raised on direct appeal. Notwithstanding,
construing the arguments made by the movant in support thereof, he
appears to argue that counsel was ineffective for failing to pursue
the claims. A claim of ineffective assistance of counsel may
constitute cause for failure to previously raise the issue. United
States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Attorney
error, however, does not constitute cause for a procedural default
unless it rises to the level of ineffective assistance of counsel
under the test enunciated in Strickland v. Washington, 466 U.S. 668
(1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Thus, the
claims will be identified in this Report, infra.

In order for the movant to prevail on a claim of ineffective
assistance of counsel, he must establish that 1) his counsel's
representation fell below an objective standard of reasonableness;
and 2) but for the deficiency in representation, there is a
reasonable probability that the result of the proceeding would have
been different. Strickland v. Washington, 466 U.S. 668 (1984). A

_____

[2]At first glance, it appears the movant's motion to vacate may have been
executed at a time different than set forth in the execution portion of the
motion because although he appears to have signed the motion on April 21,
2008, the clerk stamp reflects a docket date of October 10, 2008. (Cv-DE#1).
Notwithstanding, pursuant to the government's answer to the motion, the
government explains that the movant timely filed the motion on the government
bearing a certificate of service dated April 21, 2008. However, the movant
failed to file the motion with the District Court. Upon the government
learning that the movant had failed to file the motion with the court, the
government transmitted the motion to the court for filing and it was thus
docketed on October 10, 2008.

court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-04 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-pronged Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). The movant, in this collateral proceeding, does not claim that but for counsel's alleged deficient performance, he would not have pleaded guilty and would have proceeded to trial. Notwithstanding, his claims are bereft of record support.

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11th Cir. 1994).

In the foregoing claims, the movant argues counsel was ineffective throughout his trial proceedings. Notwithstanding the

movant's claims, all of the issues set forth therein are without merit.

In **claim one**, the movant asserts he was denied effective assistance of counsel when his attorney failed to file a motion to suppress that the ATF Miami Crime Gun Center received a referral regarding a Glock pistol seized by the Bahamian Police. (Cv-DE#1:2).

Although counsel did not file a motion to suppress admission of evidence related to a prior gun purchase by Smith for the movant, counsel nevertheless vehemently objected to its admission. (Cr-DEs#49:5-11;77:11-12). The movant is correct that defense counsel failed to specifically argue the admission of the referral from the ATF Gun Center; notwithstanding, counsel argued the inadmissibility of the evidence pursuant to Federal Rule of Evidence 403 and whether the evidence was inextricably intertwined. (Id.). The District Court, prior to commencing jury selection, overruled the objection and the Eleventh Circuit thereafter affirmed. (Cr-DEs#49:11;85). Accordingly, it is evident from the record that counsel was not ineffective as he argued the admissibility of the evidence and he thereafter preserved the issue for appeal. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims.

In **claims two** and **three**, the movant asserts he was denied effective assistance of counsel when his attorney failed to inform the jury that the government was "playing games with words" and that the ATF's decision to abandon its opportunity to have the movant caught in a sting of multiple firearm purchases was odd. (Cv-DE#1:3). Specifically, the movant argues that although there

12

were recorded conversations between he and Smith, the movant never made any statements that he wanted to purchase any firearms from informant Smith or any conversation about money being exchanged.

First, it was never alleged that the movant was purchasing firearm(s) from Smith. Rather, the issue was, which was attested to during trial, whether the movant asked Smith to purchase firearms for him. (Cr-DE#49:64-66,70-72). As such, the movant fails to demonstrate that counsel was deficient for failing to inform the jury that the government failed to provide evidence of any conversations reflecting the movant wanting to purchase a firearm from Smith.

Second, Smith's testimony reveals that the movant provided him with money to make the purchase of the Glock pistols while inside the pawnshop in a discreet manner. (Cr-DE#49:87). The pawnshop clerk, Josel Alarcon, was unable to testify to this as he, at the time, was in the back of the store making a photo copy of Smith's identification card. (Id.).

Moreover, the movant is correct that a story was changed, however, he appears to be confused. The agents never decided to abandon an opportunity to have the movant caught in a sting for multiple firearm purchases, however, the agents did request that Smith change the story he was telling the movant. (Cr-DE#49:76). An excerpt of Smith's testimony reveals:

> Q. Okay. Now, did there come a time when the agents asked you to change the story you're telling the defendant?
>
> A. Yes.
>
> Q. How did they want you to change the story?
>
> A. To tell him that they was rusted.

13

Q. And did they tell you why they wanted you to do that?

A. Because they wanted us to go the pawnshop, well, go – they wanted to try something else.

Q. Did you make a call or did you make calls to the defendant to change up the story?

A. Yes.

Q. And did you record those calls?

A. Yes.

Q. And did you have an opportunity to listen to the recordings of those calls?

A. Yes.

Q. And were those recordings a fair and accurate representation of your conversations with the defendant?

A. Yes.

Q. Did you have an opportunity to listen or, excuse me, to review the transcripts of those calls?

A. Yes.

Q. And were the transcripts a fair and accurate representation of the recordings?

A. Yes.

(Cr-DE#49:76-77). After the foregoing line of questioning, the recording of Smith's conversation with the movant was played. The transcript of the recordings reveal:

GREEN: Hey, Greg. What's going on?

SMITH: What's up, boy?

GREEN: Right here. Taking it easy.

SMITH: Uhm...The shit that he had, they didn't look right. They was like... Do... do you want anything or you want the shit that works?

GREEN: It wasn't working, eh?

SMITH: Huh?

GREEN: You think they was working?

SMITH: Nah, nah, nah. They looked... they looked kinda fucked

14

up...old and rusted.

GREEN: (Laughs). I know them kinds of things.

SMITH: Yeah, yeah. So, I ain't...I ain't...I don't know shit about
them, but I know goddamn rust when I see it. You know what
I'm saying?

GREEN: Yeah.

SMITH: Then he's trying to give it to us at that price.

GREEN: Yeah.

SMITH: But uh...shit! 'Cause I...I need some seeds to get this
fucking ticket out...out the way. On front. And any fucking
thing will work now.

GREEN: Ticket.

SMITH: Huh?

GREEN: What you mean, ticket?

SMITH: Yeah, yeah.

GREEN: (U/I). Nah, I ain't gonna buy them.

SMITH: Nah. Nah. We ain't... we ain't with that.

GREEN: I ain't getting them from that bitch.

SMITH: Yeah, so...

GREEN: Huh?

SMITH: So, come up with something else.

GREEN: I mean, I can look at it.

SMITH: They ain't worth it. That's what I'm telling you. They
don't... they don't look worth it to me. You know?

GREEN: Oh, all right.

SMITH: Look like they been in fucking water.

GREEN: Yeah.

SMITH: Yeah, and they look a little rusty. So, I ain't fucking with
that.

GREEN: (U/I).

SMITH: And uh...

GREEN: Alright.

SMITH: So...

15

```
GREEN: Alright, then, (U/I).

SMITH: You ain't got no... nothing else? Like uh... like another
       shop?

GREEN: Yeah, I try to tell you let's go and you don't wanna go.

SMITH: Huh?

GREEN: You act like you didn't want to go.

SMITH: Yeah, yeah. Well, shit, I need it now.

GREEN: Well then tomorrow.

SMITH: Alright, alright.

GREEN: And we can do something. Alright.

SMITH: Alright, yeah.

GREEN: Okay.

(End of recording)
```

(Government Composite Trial Exhibit No. 2T).

Moreover, even if appellate counsel had raised the arguments proffered in support of these claims, given the overwhelming evidence, which included tape recordings of conversations, as well as, the testimonies of agents, the government cooperator and other witnesses, no showing has been made that the subject errors would have resulted in a non-guilty verdict. Consequently, the movant cannot establish prejudice arising from counsel's failure to pursue these claims.

In **claim four**, the movant asserts that he was denied effective assistance of counsel when his attorney failed to argue that the transcript of the conversation on September 19, 2006, between Smith and the movant was unclear as to the subject matter. (Cv-DE#1:3).

Although there are two excerpts from telephone conversations recorded on September 19, 2006, it appears the movant is contending

16

that the excerpt played during trial fails to mention that a firearm purchase was being planned.

The excerpt of the recorded telephone conversation from September 19, 2006 reveals:

GREEN: Yeah.

SMITH: Hey, call me before I get out of here. I get out of here like about 4:00.

GREEN: All right.

SMITH: All right. So, let me know around... whatever time.

GREEN: Okay.

SMITH: //Where, where we going at, where (are) we going (to) be? You know?

GREEN: (U/I). I...I...

SMITH: You don't know yet.

GREEN: We probably should go back to that same old spot.

SMITH: Yeah.

GREEN: You don't think so.

SMITH: Yeah, but, well, shit, you know, it was successful the last time, so shit. (U/I).

GREEN: Yeah.

SMITH: We'll do it like that. So...

GREEN: All right.

SMITH: You want me to meet you over there...

GREEN: //That's fine.

SMITH: ... 'cause you know they close kind of early.

GREEN: Uhm...(U/I).

SMITH: //Well, just meet me and then... (Stutters)

GREEN: Even if you go there ahead of time and line it up.

SMITH: Yeah.

GREEN: However, you know, I'll just come. Anyway, (U/I).

17

```
SMITH: Yeah, yeah, yeah. Okay, all right/

GREEN: All right.
```

(Government Composite Trial Exhibit 2T).

Moreover, Smith's testimony at trial not only corroborated the foregoing recorded conversations, but it further explained the details of the conversation. The testimony revealed:

```
Q: Mr. Smith, when the defendant says to you "that same old spot,"
   what do you take that to mean?

A: 27th Avenue Pawnshop.

Q: And why do you think it means that?

A: Because that's the only place we went.

Q: You had gone there before?

A: Yeah, 2005.

Q: And when you're referring to it was successful the last time,
   what are you talking about?

A: We got - we bought three guns the last time in 2005.
```

(Cr-DE#49:79). As is evident from the recordings in conjunction with Smith's trial testimony, the subject matter of the recording is very clear; the two men were discussing where to purchase firearms. As such, the movant has failed to demonstrate that counsel was deficient for failing to argue that the context of the conversations were unclear despite the government's assertions that Smith and the movant discussed the purchase of a firearm. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims.

In **claims five and seven**, the movant asserts he was denied effective assistance of counsel when his attorney failed to stress

that the government did not provide video evidence of the movant and Smith at the pawnshop to support Smith's testimony that an exchange of money to purchase the firearm was discretely done at the store or that Josel Alarcon failed to testify that he saw the men exchange money. (Cv-DE#1:4). The movant further asserts he was denied effective assistance of counsel when his attorney failed to utilize or introduce video tapes which demonstrated inconsistences and fabrications. (Cv-DE#1:6).

The movant is correct in that videos demonstrating the exchange of money between he and Smith for purchase of the firearm was not provided. Moreover, he is correct in stating Alarcon's testimony was devoid of any information pertaining to any exchange of money between the men. Notwithstanding, the movant fails to demonstrate that he was prejudiced as a result thereof. Moreover, he fails to explain how the admittance of any video, if they existed, would have resulted in a non-guilty verdict.

Moreover, as previously discussed supra, Smith's testimony revealed that the movant provided him with money to make the purchase of the Glock pistols while inside the pawnshop in a discreet manner. (Cr-DE#49:87). The pawnshop clerk, Alarcon, was unable to testify to this as he, at the time, was in the back of the store making a photo copy of Smith's identification card. (Id.).

Likewise, the movant fails to specify the inconsistences and fabrications he contends the video tape would have demonstrated. Notwithstanding, even if the video tapes do prove his self-serving allegation, he nevertheless fails to show that admittance of those tapes would have resulted in a not guilty verdict. Under these circumstances, no deficient performance or prejudice has been

established pursuant to <u>Strickland</u>, <u>supra</u>, and the movant is therefore entitled to no relief on the claims.

In **claim six**, the movant asserts he was denied effective assistance of counsel when his attorney failed to impeach Alarcon with a prior inconsistent statement. (Cv-DE#1:4-5). Specifically, the movant argues that counsel never introduced Alarcon's statement at trial, that he previously told law enforcement that Smith visited the pawnshop alone to retrieve the firearm. (<u>Id.</u>). The movant also takes contention with Alarcon's testimony that when Smith arrived at the pawnshop, he went straight to the Glock firearm and did not seem interested in any other firearm. (<u>Id.</u>).

Although, the movant is correct that defense counsel did not introduce Alarcon's statement at trial, his claim nevertheless fails on the merits because on direct appeal, the government specifically questioned Alarcon regarding the one occasion, October 13, 2006, wherein Smith visited the store alone to retrieve the firearm. As such, it was unnecessary for defense counsel, on cross-examination, to pursue the issue, especially when there was sufficient evidence to indicate that aside from the October 13, 2006 visit, the movant accompanied Smith on all pawnshop visits.

Moreover, on cross-examination, it is evident that counsel attempted to impeach Alarcon's testimony when he questioned the witness regarding whether he informed the agents about everything he knew regarding the case.

Likewise, the movant fails to demonstrate how he was prejudiced from defense counsel's failure to introduce that Smith visited the pawnshop alone to retrieve the firearm and counsel's failure to argue Alarcon's testimony that Smith, upon entering the

20

pawnshop, proceeded to view the Glock pistol. As such, the movant cannot establish prejudice arising from counsel's failure to pursue this claim.

In **claim eight**, the movant asserts he was denied effective assistance of counsel when his attorney failed to impeach Agent Elbaum. (Cv-DE#1:7). However, the movant fails to articulate how the agents statements were inconsistent. Moreover, even if the agent's statements were inconsistent and counsel did in fact fail to impeach the agent's testimony during trial, given the overwhelming evidence at trial no showing has been made that the subject errors would have resulted in a not-guilty verdict. Consequently, the movant cannot establish prejudice arising from counsel's failure to pursue this claim.

In **claim nine**, the movant asserts he was denied effective assistance of counsel when his attorney failed to raise the possibility that the pawnshop was used for its convenience and location. (Cv-DE#1:7). In support thereof, the movant states that counsel failed to inform the jury that across the street from the pawnshop, he was a sales representative for Florida Engineering glass, a company that fabricates commercial windows. (Id.). It appears the movant is arguing that his employment offices were located near the pawnshop, as such, it explains why the movant visited the pawnshop three days a week, towards the end of the work day. (Id.).

Notwithstanding the movant's allegations, he fails to explain how counsel's failure to inform the jury regarding the convenience and location of the pawnshop prejudiced him. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is

21

therefore entitled to no relief on the claims.

In **claim ten**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that the ATF's operational plan was questionable. (Cv-DE#1:8). Despite the movant's allegations, he fails to specify the deficiency regarding the agent's testimony to the operational plan. As such, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims.

To the extent the movant contends the actual operational plan in place at the time of his arrest was faulty, this claim is not cognizable pursuant to a §2255 motion, as it appears the movant does not contend either his sentence or conviction. There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the movant demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d 1097 (5th Cir. 1975); Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994); Graziano v. United States, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a

22

lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.). Therefore, the movant is entitled to no relief on this claim.

In **claim eleven**, the movant asserts he was denied effective assistance of counsel when his attorney failed to call law enforcement officers as witnesses during trial. (Cv-DE#1:8). According to the movant, if law enforcement officers were called to testify at trial, their testimony would have revealed that the gun was not in the movant's vehicle at the time of his arrest.

The movant cannot prevail on this claim because there has been no showing that calling other law enforcement officers to testify as a witness at trial would have resulted in a not guilty verdict. Moreover, the movant fails to name which law enforcement officer was present at the time of his arrest which could provide a statement refuting the testimony that the firearm was found inside the movant's vehicle. To the extent there was another law enforcement present, in all likelihood, the officer's testimony would have corroborated the other agents' testimony, along with the witnesses' testimony and confirmed finding the firearm in his vehicle. Finally, the movant does not provide an affidavit or other reliable indicia that this witness would have agreed to testify at trial, and otherwise offered exculpatory testimony during the trial on the movant's behalf. Absent such a showing, the movant cannot prevail in establishing either deficient performance or prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and is therefore entitled to no relief on this claim.

In **claim twelve**, the movant asserts he was denied effective assistance of counsel when his attorney failed to impeach King's

testimony with a prior written statement. (Cv-DE#1:9). In support thereof, the movant argues that counsel failed to show the jury that David Sherrod King, a prisoner at the Federal Detention Center and the movant's cell mate, wrote an eight page written statement that failed to mention particular firearms, to wit: AK-47, AR-15 and M-16s. (<u>Id.</u>). This claim is without merit.

At trial, King testified that while at the FDC, the movant informed him that he was providing Smith with money to buy the firearms. (Cr-DE#49:148-149). Moreover, the movant informed King that he wanted Glock pistols in particular because they are the easiest pistols to be modified into fully automatic handguns and they were very popular in the Bahamas. (<u>Id.</u>). The movant further informed King that in order to conceal the pistols, he placed them inside Ziploc bags and in turn placed the bags containing the pistols inside whole, raw chickens and then shipped them to the Bahamas. (<u>Id.</u>). The only time King's testimony made reference to AK-47s, AR-15s and M-16s, was when questioned as to whether the movant informed King if there were any other types of guns that were popular in the Bahamas. (<u>Id.</u>). However, it was clear on cross-examination, that King did not testify that the movant hid AK-47s in the chickens. (<u>Id.</u>:150).

The movant's contention that counsel failed to show the jury an eight page statement which failed to reference AK-47, AR-15 and M-16s appears to be irrelevant as it was clear on both direct and cross examination that said weapons were only in response to the types of firearms popular in the Bahamas and it was clear that the said firearms were not shipped hidden in raw, whole chickens. As such, the movant fails to show how counsel's failure to show the jury the eight page statement was prejudicial.

Moreover, to the extent the movant argues that counsel failed to impeach King's testimony using the eight page statement, this claim is also without merit. Although the movant is correct that counsel did not demonstrate to the jury the statement, counsel is not deficient as he attempted to impeach King's testimony several times. First, counsel tried to impeach King's testimony regarding the assault rifles. (Cr-DE#49:150). He again attempted to impeach King's testimony when he implied that King stole Green's copy of the discovery in this case and King lied to the judges that sentenced him in both 1991 and in 1999. (Cr-DE#150-158). Accordingly, the movant, once again, fails to demonstrate that counsel was deficient pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and is therefore entitled to no relief on this claim.

To the extent, the movant argues that counsel was ineffective for failing to explain to the jury that King solicited information from the movant by trying to pretend he wanted a job when he got released and asked him how the export business worked, this claim is without merit. (Cr-DE#1:9). Again, the movant fails to make any showing that he was prejudiced because counsel failed to make said explanation. Absent such a showing, the movant cannot prevail in establishing either deficient performance or prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and is therefore entitled to no relief on this claim.

In **claim thirteen**, the movant asserts he was denied effective assistance of counsel when his attorney failed to call witnesses, adequately cross examine agents regarding exculpatory evidence and inconsistencies and call into question the credibility of government witnesses. (Cv-DE#1:9).

25

In relation to the movant's claim that counsel failed to present a defense to the charges against him, this claim is without merit. First, the simple fact that counsel did not present evidence alone is not sufficient to show deficient behavior. Moreover, such a defense is usually in the form of effective cross-examination of government witnesses, as well as arguing that the government failed to meet its burden of proof. In the underlying criminal case, and as discussed in relation to the foregoing claims, counsel effectively examined the witnesses and on many occasions attempted to impeach several of their testimonies. Moreover, counsel, during closing arguments argued that the government failed to meet its burden. Furthermore, the movant has failed to discuss what evidence defense counsel should have presented or why that evidence would have led to a different outcome at trial.

Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims.

In **claim fourteen**, the movant asserts he was denied effective assistance of counsel when his attorney failed to file a motion to preserve the movant's rights within the ten-day period as required. (Cv-DE#1:10). It is difficult to discern the movant's argument pertaining to this claim, as he fails to specifically state which motion counsel failed to raise.

Nevertheless, after taking the verdict, the District Court asked defense counsel whether he filed and renewed all motions, to which defense counsel replied yes. (Cr-DE#49:221). Moreover, counsel was asked whether he wanted an additional ten days for any motions, to which he replied yes; the Court thereafter directed him to submit an order reflecting an extension. (Id.). Likewise,

counsel made a Rule 29 motion at the close of the government's case, which the Court denied. (Cr-DE#49:165-166).

To the extent the movant argues he was denied effective assistance of counsel when his attorney failed to file a motion for new trial and/or a motion for judgment of acquittal, this claim is also without merit. The movant fails to make a showing that had counsel filed the aforementioned motions, he would have prevailed. Again, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims.

## Evidentiary Hearing

The movant's final request for an evidentiary hearing on his claims should be denied. (Cv-DE#1). A hearing is not required on patently frivolous claims or those which are based upon unsupported, generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 4th day of May, 2009.


_____
UNITED STATES MAGISTRATE JUDGE


cc:  Stanford Green, Pro Se
     No. A 78-399-573
     Hernando County Detention Center
     16425 Spring Hill Drive
     Brooksville, FL 34604

     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132

     Todd William Mestepey, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132